UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RICKY RODGERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:03CV152 RWS ) |
| MACO MANAGEMENT CO. INC., et al., | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Defendant Maco Management employed Plaintiff Ricky Rodgers as a maintenance service employee. Maco fired Rodgers for refusing to replace a hot water heater. Rodgers filed this lawsuit alleging that Maco's action was an act of employment discrimination based on sex and race. Rodgers also asserts that he was terminated in violation of his right to due process under the Fourteenth Amendment. Maco has moved for summary judgment. Because Rodgers has failed to establish a claim for employment discrimination and is unable to establish a due process violation I will grant Maco's motion for summary judgment.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions

on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[1]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

---

[1] See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(applying McDonnell Douglas to an ADEA claim); Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir. 2003) (applying McDonnell Douglas burden-shifting analysis to claims under the ADA and the MHRA).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt, 85 F.3d at 1316. A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Background*

The following facts are taken from Plaintiff Rodgers' trial brief.

Defendant Maco is a private non-governmental corporation established in the State of Missouri. Maco provides property management for government apartment complexes. Plaintiff Rodgers is an African American male who lives in Sikeston, Missouri. On August 20, 2001, Rodgers was hired by Maco to perform general maintenance, which included minor electrical and

plumbing work, painting, carpentry and grounds upkeep.

Shortly after his employment began, Maco acquired another apartment complex called Kathleen Manor. Maco did not have any personnel to provide maintenance for that complex. Janet Milam, Property Manager Supervisor for Maco, asked Rodgers if he would be interested in providing maintenance at Kathleen Manor after his normal work hours with Maco. He would be hired as an independent contractor and paid on an hourly basis. Rodgers agreed to this arrangement and began to perform maintenance work at Kathleen Manor in addition to his regular work at Maco.

In September of 2002, Rodgers notified Milam that he would no longer be able to perform the additional work at Kathleen Manor due to personal reasons and his other part-time employment. Milam asked Rodgers if he could still help out at Kathleen Manor until Maco could hire someone else to work at that complex. Rodgers agreed to continue to work at Kathleen Manor for a short time. He told Milam to get someone to replace him as soon as possible.

On October 18, 2002, Rodgers received a call from Lavern Thomas who was Rodgers' supervisor for the property Maco managed at Sikeston Apartments No. 1. Thomas asked Rodgers to go to Kathleen Manor and replace a hot water heater. Rodgers told Thomas that he had told "them" [Maco] that he could not do additional work at Kathleen Manor anymore. Rodgers declined to replace the hot water heater.

On October 23, 2002, Milam and her assistant, Shelia Cobb, met with Rodgers. During the meeting Milam fired Rodgers. Milam gave Rodgers a "warning report" that indicated that he was dismissed for his refusal to go to Kathleen Manor and repair the hot water heater. In additional, Milam noted that Rodgers had committed violations involving substandard work

quality and violations of company policies and procedures.

On February 24, 2003, Rodgers filed a charge of employment discrimination with the Missouri Commission on Human Rights and with the Equal Employment Opportunity Commission. His charge asserts that he was discriminated against on the basis of his race when he was fired by Maco. The charge asserts that a female employee was "written up for the same thing" yet she was not discharged. The MHRC issued a right to sue letter on August 28, 2003. The EEOC issued its right to sue letter on September 16, 2003.

On December 15, 2003, Rodgers filed the present under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[2] Rodgers sought relief for alleged employment discrimination based on sex, race, age and retaliation. In addition he alleges that Maco violated his right to procedural due process under the Fourteenth Amendment of the United States Constitution. After filing this case Rodgers dismissed his discrimination claims based on age and retaliation. Rodgers suit was filed against Maco and Maco employees, Milam, Cobb, and Jason Maddox in their individual and official capacities. Maddox is a manager at Maco. Defendants will be collectively referred to as "Maco."

***Discussion***

*Exhaustion of claims requirement under Title VII*

Central to the statutory scheme provided by Title VII is the requirement that a plaintiff exhaust his administrative remedies by filing a charge with the EEOC. Shannon v. Ford Motor

---

[2] Although Rodgers received a right to sue letter from the MHRC he did not file a claim of employment discrimination under the Missouri Human Rights Act (MHRA), R.S.Mo. 213.010, *et seq.* It appears that a claim under the MHRA would not have been timely because Rodgers' lawsuit was filed more than 90 days after he received his right to sue letter from the MHRC.

Co., 72 F.3d 678, 685 (8th Cir. 1996)(quotations and citations omitted). The purpose of the exhaustion requirement is to allow the EEOC the opportunity to investigate discriminatory practices and perform its role of obtaining voluntary compliance and promote conciliatory efforts. Id. In order to exhaust administrative remedies, a Title VII plaintiff must timely file charges with the EEOC and obtain, from the EEOC, a "right to sue letter." Id. See also 42 U.S.C. § 2000e-5 (b), (c), and (e). After exhausting his administrative remedies, a plaintiff obtains the right to file a civil action in federal court based upon the employment discrimination claim alleged in the EEOC charge, along with allegations that are "'like or reasonably related'" to that claim. Id. (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)). A failure to exhaust Title VII's administrative remedies, however, bars the plaintiff from filing a civil lawsuit. Williams, 21 F.3d at 222.

Maco seeks summary judgment on Rodgers' claim of race discrimination. Maco asserts that this claim was not administratively exhausted as required by law before filing this lawsuit.

Courts will liberally construe discrimination claims made by *pro se* litigants. Shannon, 72 F.3d at 685. However, there is a great difference between "liberally reading a claim which lacks specificity ... and inventing *ex nihilo* a claim which was simply not made" by the plaintiff. Id. A claim of race discrimination is separate and distinct from a claim of sex discrimination. The EEOC form that Rodgers used to make a charge of discrimination consists of one page. The form's section entitled "Cause of Discrimination Based on (Check appropriate box(es))" provides nine boxes that specify the basis of the charging party's claims. The boxes are clearly titled: race, color, sex, religion, national origin, retaliation, age, disability, and other. In addition, the EEOC form requires the charging party to specify the particulars of his claim in writing in the next

section of the form.

The only box Rodgers' checked on his charge form was for sex discrimination.  His description of his claim was based solely on sex discrimination.  Rodgers did not check the box marked "race" on his charge form nor did he allege race discrimination in the descriptive section of his charge.

Based upon Rodgers' responses in his EEOC charge form, I find that Rodgers did not make a race discrimination claim with the EEOC.  As a consequence, Maco was not given the opportunity to address or reach a conciliatory resolution of that claim.  Allowing a race discrimination claim to go forward would circumvent Title VII's goals of having the EEOC investigate and attempt to conciliate such a claim.  Consequently, this claim is barred based on Rodgers' failure to exhaust his administrative remedies.  See Williams, 21 F.3d at 223 (plaintiff could not maintain a claim of race discrimination when she failed to check the box for race discrimination on the EEOC charge form and failed to allege such discrimination in her affidavit supporting the EEOC charge).  Therefore, I will grant summary judgment to Maco on Rodgers' claim of discrimination based on race.

*Title VII does not impose individual liability on managers and supervisors*

Maco did not seek summary judgment on Rodgers' Title VII claims against the its employees in their individual capacity.  As a matter of law, however, this claim must fail.  Rodgers asserted Title VII claims against Maco employees Milam, Maddox, and Cobb in their "official capacity and in their individual capacity."  A distinction between official and individual capacity is not applicable in a Title VII action.  An employee is not individually liable for a claim under Title VII.  Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1111 (8th Cir.1998).  A supervisor may only

be sued under Title VII in his role as an employee. Any damages assessed against an employee are imposed solely against the common employer, here, Maco. Id. As a result, Defendants Milam, Maddox, and Cobb are entitled to summary judgment for Rodgers' Title VII claims against them in their individual capacity.

*Sex discrimination under Title VII*

Rodgers' Complaint asserts a disparate treatment claim based on sex discrimination. Because Rodgers does not offer any direct evidence of discrimination his claim will be analyzed under the burden-shifting framework of McDonnell Douglas. To establish a *prima facie* case for a disparate treatment claim, Rodgers must show that: (1) he is a member of a protected class; (2) he was meeting the legitimate expectations as to his duties; (3) he suffered an adverse employment action; and (4) circumstances give rise to an inference of sex discrimination because similarly situated employees, who were not members of the protected group, were treated differently. Gilooly v. Missouri Dept. of Health and Senior Services, 421 F.3d 734, 737-739 (8th Cir. 2005).

It is undisputed that Rodgers suffered an adverse employment action. In dispute is whether he was performing his duties to Maco's expectations and whether a similarly situated employee not of Rodgers' protected class was treated differently than Rodgers for a similar infraction.

In support of his claim of sex discrimination, Rodgers asserts that (1) he was fired from his job for refusing to perform independent contractor work for his employer; (2) his termination was too harsh because he had never been disciplined before; (3) Maco ran a newspaper ad for a maintenance person that appeared in the paper on the day he was fired, and (4) a female co-

worker was disciplined differently than Rodgers.

The forth element of Rodgers' *prima facie* case requires him to offer evidence that there were individuals similarly situated in all respects to him who were treated differently. The individuals used as comparators must have dealt with the same supervisor and have been subject to the same standards as Rodgers. Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003).

To establish this prong Rodgers asserts that Lavern Thomas was a similarly situated female Maco employee who received more favorable treatment than Rodgers. In his trial brief Rogers states that Thomas was employed as a site manager for Maco. A Maco employee "violation report," dated September 20, 2002, notes that Thomas committed various infractions, including being tardy and rude. Thomas was not terminated, she was merely warned and permitted to continue with her job.

A comparison of Rodgers and Thomas establishes that they were not similarly situated employees. They did not do the same type of work for Maco nor were they in the same department. Rodgers was a maintenance worker while Thomas was a site manager. There is not any evidence in the record to establish that Rodgers and Thomas were subjected to the same standards of employment. The incidents for which they were disciplined were also not similar. Based on this evidence, Rodgers has failed to establish the forth pron of his *prima facie* case.

Rodgers evidence that Maco ran a newspaper ad for a maintenance worker on the same day that he was terminated does not create any inference of discrimination. The month before the ad ran Rodgers told Maco that they needed to replace him to do the work at Kathleen Manor. The ad may have been for that position. The ad may have also been placed the day before Rodgers was fired in anticipation of his termination the next day. Such planning by an employer

may be insensitive but it does not create an inference of discrimination.

Rodgers' claim that he was meeting the legitimate expectations as to his duties at Maco is also disputed. For purposes of this motion, however, I will defer to Rodgers' assertion on this point. Even assuming for argument that Rodgers has established a *prima facie* case, Maco has met its burden under McDonnell Douglas by offering a legitimate, non-discriminatory reason for Rodgers' termination. He was fired for refusing to perform work at Kathleen Manor. Rodgers' employment status at Kathleen Manor was that of an independent contractor. Even though Maco apparently retaliated against Rodgers for refusing to work at Kathleen Manor, this action does not create an inference that it was based on sex discrimination.

A federal court in a discrimination case does not sit as a "super-personnel department that reexamines an entity's business decisions." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994). Whether Maco's decision to fire Rodgers was a poor decision, or even arbitrary and irrational, does not by itself prove that impermissible discrimination was the real reason for the employment action. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 511-12 (8th Cir. 1995).

I conclude that Rodgers has failed to establish a *prima facie* case of sex discrimination against Maco. Even if he had, Maco has offered a legitimate, non-discriminatory reason for its decision to terminate Rodgers' employment. Rodgers has failed to adduce evidence that the reason articulated by Maco was really a pretext for sex discrimination. As a result, I will grant summary judgment to Maco on this issue.

*Due process violation*

Rodgers alleges that Maco violated his right to due process under the Fourteenth Amendment of the United States Constitution by failing to provide him with a hearing before or after he was fired and by failing to provide him with a "name clearing hearing." He also alleges that he was terminated without cause.

It is undisputed that Rodgers was an at-will employee. He did not have a written employment contract and he was never told by Maco that he could only be terminated for cause. (Joint Stipul. Relating to Trial) Maco is a private non-governmental corporation.

To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law. Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999). A protected property interest exists where a plaintiff has a "legitimate claim of entitlement" to a benefit that is derived from a source such as contract or state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A plaintiff has a protected property interest in his employment if he can show "that he could have been fired only for good cause." Spitzmiller v. Hawkins, 183 F.3d 912, 916 (8th Cir. 1999).

Under Missouri law, an employee is considered to be "at-will" unless he is subject to a contract setting the duration of his employment or delineating the reasons for which he can be fired. Callantine v. Staff Builders, Inc., 271 F.3d 1124, 1130 (8th Cir. 2001). "At-will" employees can be terminated at any time without cause. Paul v. Farmland Indus., Inc., 37 F.3d 1274, 1276 (8th Cir.1994).

Rodgers admits that he was an at-will employee. Under Missouri law Rodgers could have been dismissed at any time by Maco without cause. Rodgers argues that Maco violated its own

policies when it failed to follow employment procedures outlined in its personnel manual and in its management handbook.[3]

The Missouri Supreme Court has held that employee handbooks cannot alter or modify employment at-will status unless they specifically grant employee rights. <u>Johnson v. McDonnell Douglas Corp.</u>, 745 S.W.2d 661, 663 (Mo. 1988). In the present case, Maco's personnel manual and management handbook do not grant any rights or entitlements to employees which create a property interest. Because I find that Rodgers did not have any right to due process under the Fourteenth Amendment, I will grant Maco summary judgment on Rodgers' that clam.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants Maco Management Company, Janet Milam, Jason Maddox, and Sheila Cobb's motion for summary judgment [#51] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 7th day of February, 2006.

---

[3] The personnel manual and management handbook were created by a company named Lockwood Realty, Inc. which was purchased by Maco before Rodgers was employed by Maco. These publications still bear Lockwood's name on their covers.